1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11    CHRISTOPHER ALAN SWENDSEN,                No.  2:13-cv-02082-TLN-CKD

12                 Plaintiff,

13          v.                                  **ORDER**

14    OCWEN LOAN SERVICING, LLC;
      WELLS FARGO BANK; WESTERN
15    PROGRESSIVE, LLC and Does I-XX et.
      al.,
16
                 Defendants.
17

18

19          This matter is before the court on Defendants' Amended Motions to Dismiss the

20    Complaint and to Expunge the Lis Pendens.  (Defs.' Am. Mot. Dismiss, ECF 12.)  Plaintiff

21    opposes the motion.  (Pl.'s Opp'n, ECF 13.)  Defendants have filed a reply.  (Defs.' Reply, ECF

22    15.)  For reasons set forth below, Defendants' Motions are GRANTED.[1]

23    ///

24    ///

25    ///

26    ///

27    _____

28    [1]     Because oral argument will not be of material assistance, the court orders this matter
      submitted on the briefs.  E.D. Cal. L.R. 230(g).

                                            1

1

**BACKGROUND**

2

**A. Parties and Relevant Factual Allegations**

3    Plaintiff is the owner of real property located at 200 Scrub Oak Court, Roseville,

4    California 95747.  (Compl., ECF 2 ¶ 2.)  Defendants in this action are Ocwen Servicing, LLC,

5    ("Ocwen") the servicer of Plaintiff's home loan, Wells Fargo Bank, N.A., the former trustee for

6    the loan, and Western Progressive, LLC, ("Western Progressive") the foreclosing agent and

7    current trustee.  (ECF 12 at 1–2.)

8    On January 2, 2004, Plaintiff signed a note for the loan that is the subject of this action.

9    (ECF 10-1, Ex. 1.)[2]  The deed of trust for the 200 Scrub Oak Court property was recorded by the

10   Placer County Recorder on January 16, 2004.  (Deed of Trust, ECF 10-1, Ex. 2.)  In May 2011,

11   Plaintiff defaulted on the loan.[3]  (Not. Default, ECF 10-1, Ex. 5.)  Western Progressive filed a

12   notice of default with the Placer County Recorder on September 26, 2011.  (ECF 10-1, Ex. 5.)

13   Plaintiff claims that "in 2011, Defendants initiated negotiations with Plaintiff toward a

14   loan modification." (ECF 2 ¶ 13.)  "The Bank requested certain specific information and

15   provided a deadline to provide that information." (Id.)  Plaintiff alleges that he submitted a

16   completed loan modification application to Defendants on October 11, 2011.  (Id.)  Plaintiff

17   further alleges that on October 13, 2011, he called Defendant Ocwen's customer service

18   department and asked the service agent to provide his or her name, which the agent refused to do.

19   (Id. ¶ 13.)  Plaintiff states that on that day he "faxed complete copies of the loan modification

20   application to three separate fax numbers . . . as [he was] directed to do by the customer service

21

---

22   [2]    Defendants request that this court take judicial notice of documents recorded with the
Placer County Recorder and the United States Bankruptcy Court for the Eastern District of

23   California. (Req. Judicial Notice, ECF 10.)   In resolving a motion to dismiss, the court may
consider matters that are subject to judicial notice, including matters of public record, and

24   proceedings in other courts if they have a direct relation to the matters at issue.  See Akhtar v.
Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012); United States ex rel. Robinson Rancheria Citizens

25   Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992).  Here, the documents recorded by the
Placer County Recorder (ECF 10-1, Ex. 1–7) are public records and Plaintiff's Voluntary

26   Petitions for Bankruptcy (ECF 10-1, Ex. 8–9) are matters directly related to these proceedings.
For these reasons, the court GRANTS Defendants' request for judicial notice.

27   [3]    The Complaint erroneously states "Plaintiff defaulted on his loan with Defendants in or

28   about 2010." (ECF 2 at 5.)

2

1  agent." (Id.)  Plaintiff alleges that when he followed-up, "[o]n or about October 14, 201[1],[4]

2  Plaintiff was told by "Ahmad", an employee with Defendant Western Progressive, that the loan

3  application was incomplete."  (Id. ¶ 14.)  "Ahmad stated that Plaintiff was to contact Ocwen."

4  (Id.)  Plaintiff alleges that he then contacted Defendant Ocwen, whose agent again refused to

5  provide his name and falsely stated that Ocwen had not received a loan modification application

6  from Plaintiff.  (ECF 2 ¶ 16.)

7      Plaintiff alleges that on November 5, 2011, Western Progressive refused to provide the

8  status of Plaintiff's loan modification, "and again requested another authorization letter, which

9  letter had been previously provided, as a delaying tactic."  (Id.)  Plaintiff alleges that he made

10  numerous phone calls to Defendants from November 2011, to the Spring of 2012, attempting to

11  secure a loan modification.  (Id. ¶¶ 17–18.)  Plaintiff asserts that he resubmitted the loan

12  modification application several times throughout this period, including filing another loan

13  modification application "[o]n or about April 2012."  (Id. ¶ 19.)  Defendants served Plaintiff with

14  another notice of default on February 2, 2013, and served Plaintiff with a notice of trustee's sale

15  on July 22, 2013.  (Id. at ¶¶ 20–21.)  Plaintiff alleges that Defendants engaged in dilatory and

16  evasive tactics to prevent Plaintiff from modifying his loan and wrongfully engaged in the

17  foreclosure process while Plaintiff's modification application was pending

18      **B. Plaintiff's Claims for Relief and Relevant Procedural History**

19      Plaintiff filed for Chapter 13 bankruptcy relief in the United States Bankruptcy Court for

20  the Eastern District of California on October 31, 2012, as Case No. 12-39223 ("first

21  Bankruptcy").   The Bankruptcy Court dismissed and terminated Plaintiff's first Bankruptcy on

22  January 14, 2013.  (ECF 10-1, Ex. 9 at 1–7.)  Plaintiff filed for a second Chapter 13 bankruptcy in

23  the United States Bankruptcy Court for the Eastern District of California on March 11, 2013, as

24  Case No. 13-23230 ("second Bankruptcy").  (Id., Ex. 8.)  Plaintiff scheduled Defendants' loan

25  without dispute and did not schedule or disclose any of the claims in this action.[5]  (Summary of

26  ──────────────

27  [4]     It appears Plaintiff erred in pleading that the call with Ahmad took place on October 14, 2010, as Plaintiff recounts the phone call as part of a series of events that he alleges took place in 2011.

28  [5]     Plaintiff does not challenge Defendants' assertion that Plaintiff did not schedule potential

3

1 | Schedules for Second Bankruptcy, Schedules A, B & D, ECF 10-1, Ex. 8.)  The Bankruptcy

2 | Court dismissed Plaintiff's second Bankruptcy on September 10, 2013.  (ECF 10-1, Ex. 9.)

3 |       On October 3, 2013, Plaintiff filed this action in Federal District Court for the Eastern

4 | District of California, asserting the following claims: (1) Wrongful Foreclosure in Violation of

5 | California Civil Code § 2924 *et seq*, and (2) Unfair Competition under California Business and

6 | Professions Code § 17200 *et seq*.  (ECF 2.)  On October 15, 2013, Plaintiff filed a *Lis Pendens* in

7 | conjunction with this action, recorded in the official records of the Placer County Recorder as

8 | Doc-2013-0097944-00.  (ECF 12 at 21.)

9 | **STANDARD**

10 |       Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain

11 | statement of the claim showing that the pleader is entitled to relief."  See Ashcroft v. Iqbal, 556

12 | U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the

13 | defendant fair notice of what the claim . . . is and the grounds upon which it rests."  Bell Atlantic

14 | v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice

15 | pleading standard relies on liberal discovery rules and summary judgment motions to define

16 | disputed facts and issues and to dispose of unmeritorious claims."  Swierkiewicz v. Sorema N.A.,

17 | 534 U.S. 506, 512 (2002).

18 |       On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

19 | Cruz v. Beto, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of every

20 | reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  Retail

21 | Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

22 | "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

23 | relief."  Twombly, 550 U.S. at 570.  Ultimately, a court may not dismiss a complaint in which the

24 | plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  Iqbal,

25 | 556 U.S. at 697 (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the

26 | plaintiff pleads factual content that allows the court to draw the reasonable inference that the

27 |

28 | claims against Defendants in his filings for either bankruptcy.

4

1   defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S.

2   544, 556 (2007)).  Only where a plaintiff has failed to "nudge[] [his or her] claims . . . across the

3   line from conceivable to plausible[,]" is the complaint properly dismissed.  Id. at 680.

4        While the plausibility requirement is not akin to a probability requirement, it demands

5   more than "a sheer possibility that a defendant has acted unlawfully."  Id. at 678.  This

6   plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its

7   judicial experience and common sense."  Id. at 679.

8        In ruling upon a motion to dismiss, the court may consider only the complaint, any

9   exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of

10  Evidence 201.  See Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988); Isuzu

11  Motors Ltd. v. Consumers Union of United States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal.

12  1998).

13       If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

14  amend even if no request to amend the pleading was made, unless it determines that the pleading

15  could not possibly be cured by the allegation of other facts.'"  Lopez v. Smith, 203 F.3d 1122,

16  1130 (9th Cir. 2000) (en banc) (quoting Doe v. United States, 58 F.3d 484, 497 (9th Cir. 1995));

17  see also Gardner v. Marino, 563 F.3d 981 (9th Cir. 2009) (finding no abuse of discretion in

18  denying leave to amend when amendment would be futile).

**ANALYSIS**

20  **A.  Judicial Estoppel**

21       Defendants argue that Plaintiff should be judicially estopped from pursuing his claims

22  because Plaintiff knew of but failed to disclose his potential claims against Defendants in his

23  bankruptcy schedules, as required by the Bankruptcy Code.  (ECF 12 at 4.)  Defendants argue that

24  it would be unjust to permit Plaintiff to hide his claims from the Bankruptcy Court and then

25  pursue them in this court.  (ECF 15 at 2–3.)  In opposition, Plaintiff argues that Defendants

26  cannot invoke the equitable doctrine of judicial estoppel because "they have unclean hands . . .

27  [and] the assertion of an equitable doctrine requires clean hands."  (ECF 13 at 4.)  According to

28  Plaintiff, Defendants have unclean hands because they "unlawfully failed to evaluate Plaintiff's

5

1  application for loan modification in good faith as required by law, . . . [as] part of a concerted

2  scheme . . . to steal Plaintiff's home in order to generate insurance proceeds to pay investors, and

3  Defendants themselves, for nonperforming loans." (ECF 13 at 4–5.)   Plaintiff also argues that

4  the Court should let a jury determine whether Plaintiff knew that he had potential claims against

5  Defendants during the course of his bankruptcy proceedings.[6]  (ECF 13 at 5.)

6      Judicial estoppel, or the doctrine of preclusion of inconsistent positions, bars "a party from

7  gaining an advantage by taking one position, and then seeking a second advantage by taking an

8  incompatible position."   Whaley v. Belleque, 520 F.3d 997, 1002 (9th Cir. 2008) (quoting

9  Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600 (9th Cir. 1996)).  Judicial

10  estoppel is "an equitable doctrine invoked by a court at its discretion," New Hampshire v. Maine,

11  532 U.S. 742, 750 (2001) (quoting Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990)).  A

12  court may invoke judicial estoppel "not only to prevent a party from gaining an advantage by

13  taking inconsistent positions, but also because of 'general consideration[s] of the orderly

14  administration of justice and regard for the dignity of judicial proceedings,' and to 'protect

15  against a litigant playing fast and loose with the courts.'"  Hamilton v. State Farm Fire & Cas.

16  Co., 270 F.3d 778, 782 (9th Cir. 2001) (quoting Russell, 893 F.2d at 1037).

17      In the bankruptcy context, a party is "judicially estopped from asserting a cause of action

18  not . . . mentioned in the debtor's schedules or disclosure statements."  Hamilton, 270 F.3d at

19  782–83 (holding that plaintiff was judicially estopped from later asserting claims he knew of but

20  failed to disclose in his bankruptcy, even though the bankruptcy was dismissed without a

21  discharge of debt.)  A debtor who does not disclose a potential claim to the bankruptcy court and

22  then files a lawsuit on the same claim, "would gain a windfall by receiving the protection of the

23  bankruptcy court without having disclosed a potential asset while retaining the possibility of a

24  settlement or verdict" on the undisclosed claim.  Caviness v. England, 2007 WL 1302522, at *10-

25  11 (E.D. Cal. May 2, 2007).

26

27  [6]    The court notes the dearth of case law cited by Plaintiff in support of this argument.  It
also appears Plaintiff's counsel copied and pasted directly from Westlaw in lieu of selecting
28  appropriate authorities and applying them to the facts of this case.

6

1  "The bankruptcy code. . . places an affirmative duty on debtors to schedule their assets

2  and liabilities with the bankruptcy court, including potential causes of action. . ." Yack v.

3  Washington Mut., Inc., 389 B.R. 91, 95-96 (N.D. Cal. 2008) (citing 11 U.S.C. § 521(1); Cusano

4  v. Klein, 264 F.3d 936, 947–48 (9th Cir.2001)) (internal citations omitted).  "The debtor's duty to

5  disclose potential claims as assets does not end when the debtor files schedules, but instead

6  continues for the duration of the bankruptcy proceeding."  Hamilton, 270 F.3d at 785 (citing In re

7  Coastal Plains, Inc., 179 F.3d 197, 208 (5th Cir. 1999)).  "The debtor need not know all the facts

8  or even the legal basis for the cause of action; rather, if the debtor has enough information . . .

9  prior to confirmation to suggest that it may have a possible cause of action, then that is a 'known'

10  cause of action such that it must be disclosed."  In re Coastal Plains, Inc., 179 F.3d at 207–08

11  (internal citations omitted).  Thus, "[a] plaintiff who fails to fulfill this duty to inform the

12  bankruptcy court of his claims risks having those claims barred by judicial estoppel."  Becker v.

13  Wells Fargo Bank, NA, 2012 WL 5187792, at *3 (E.D. Cal. Oct. 18, 2012).

14  In determining whether to apply judicial estoppel, "courts apply a three-part test: (1)

15  whether a party's later position is clearly inconsistent with its original position; (2) whether the

16  party has successfully persuaded the court of the earlier position; and (3) whether allowing the

17  inconsistent position would allow the party to derive an unfair advantage or impose an unfair

18  detriment on the opposing party."  United States v. Ibrahim, 522 F.3d 1003, 1009 (9th Cir. 2008)

19  (quoting New Hampshire v. Maine, 532 U.S. at 750–51)).

20  *1.  Clearly Inconsistent Positions*

21  Defendants argue that Plaintiff has taken clearly inconsistent positions before the

22  Bankruptcy Court and this Court.  Defendants assert that Plaintiff represented to the Bankruptcy

23  Court that he had no potential claims, but subsequently filed claims against Defendants in this

24  Court, based on events that allegedly occurred before or during his bankruptcies.  (ECF 12 at 6–

25  7.)  Plaintiff insists that Defendants have failed to prove Plaintiff took inconsistent positions

26  because they have not shown that Plaintiff knew—during his bankruptcy proceedings—that the

27  present litigation was likely to arise.  (ECF 13 at 5.)

28  A party takes clearly inconsistent positions when he first declares to the bankruptcy court

7

1    that he does not have potential claims and subsequently brings suit on those undisclosed claims.

2    See Hamilton, 270 F.3d at 784 ("Hamilton clearly asserted inconsistent positions.  He failed to

3    list his claims against State Farm as an asset on his bankruptcy schedules, and then later sued

4    State Farm on the same claims.").  In Chapter 13 bankruptcy proceedings, a debtor must disclose

5    not only the claims he is aware of when he files a petition, but also those potential claims which

6    are acquired "after the commencement of the case but before the case is closed, dismissed, or

7    converted."  11 U.S.C. § 1306(a)(1).  "The integrity of the bankruptcy system depends on full and

8    honest disclosure by debtors of all their assets."  Hamilton, 270 F.3d at 785 (quoting In re Coastal

9    Plains, 179 F.3d at 208)). Therefore, "[j]udicial estoppel will be imposed when the debtor has

10    knowledge of enough facts to know that a potential cause of action exists during the pendency of

11    the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of

12    action as a contingent asset."  Hamilton, 270 F.3d at 785.

13            In this case, Plaintiff alleges that Defendants were unresponsive to his attempts to modify

14    his home loan, failed to provide information during phone calls, failed to follow statutory

15    requirements to contact him before filing foreclosure paperwork, and engaged in unfair business

16    practices related to the foreclosure process on his home.  By his own complaint, Plaintiff alleges

17    that Defendants committed these actions between May of 2011 and October of 2013.  (ECF 2 at

18    2–8.) Plaintiff filed his first bankruptcy in October of 2012, and his second bankruptcy in March

19    of 2013.  His second bankruptcy was dismissed September 10, 2013, only a few weeks before he

20    filed the complaint in this action.  (ECF 10-1, Ex. 8.)  Certainly, by the time he filed his second

21    bankruptcy, or while it was pending, Plaintiff had "knowledge of enough facts to know that a

22    potential cause of action exist[ed] during the pendency of the bankruptcy."  See Hamilton, 270

23    F.3d at 785.  Most of Defendants' actions of which Plaintiff complains in his instant cause of

24    action, already occurred at the time his second bankruptcy was pending.  Because Plaintiff did not

25    disclose any of his potential claims against Defendants in his Bankruptcy schedules, and then

26    filed claims a few weeks after his bankruptcy was dismissed, Plaintiff has taken clearly

27    inconsistent positions.

28    ///

1            *2. Judicial Acceptance of an Earlier Position*

2            A court imposing judicial estoppel must find that a court relied on or accepted the party's

3    previous inconsistent position.  See <u>Hamilton,</u> 270 F.3d at 783.  Therefore, this court must

4    determine whether Plaintiff's position was accepted by the Bankruptcy Court.  A bankruptcy

5    court may rely upon or accept a party's position even without a permanent discharge of debts.

6    See <u>Id.</u> at 784–785 (holding that a bankruptcy court may "accept" a petitioner's representations in

7    many ways short of a discharge of debt.)  In <u>HPG Corp. v. Aurora Loan Servs., LLC,</u> 436 B.R.

8    569, 578 (E.D. Cal. 2010), the court found that, because plaintiffs received the benefit of

9    automatic stays, even though their bankruptcy cases were dismissed without discharge of debts,

10   the bankruptcy court had accepted their positions and judicial estoppel of their undisclosed claims

11   asserted in a subsequent action was appropriate.  See also <u>Caviness v. England</u>, 2007 WL

12   1302522, at *12-13 (E.D. Cal. May, 3 2007) (invoking judicial estoppel on undisclosed claims

13   where plaintiff enjoyed the benefit of bankruptcy stay without discharge of debt).

14           Here, Plaintiff received the benefit of automatic stays under the bankruptcy code for both

15   of his bankruptcies.  The bankruptcy court assumed the truth of Plaintiff's schedules, which stated

16   that he did not have any potential claims when indeed he did.   Therefore, the Bankruptcy Court

17   accepted Plaintiff's earlier inconsistent position that he did not have potential claims against

18   Defendants.  See <u>HPG Corp.,</u> 436 B.R. at 578.

19           *3. Unfair Advantage*

20           The court must decide whether Plaintiff will derive an unfair advantage, or Defendants

21   will suffer an unfair detriment, if Plaintiff is allowed to proceed with his claims despite his failure

22   to disclose them in his bankruptcies.  The law in this area is clear: a plaintiff who has received the

23   benefit of an automatic stay under 11 U.S.C. § 362(a) would receive an unfair advantage by

24   prosecuting claims against a defendant after failing to disclose those claims in his bankruptcy

25   proceedings.  <u>See</u> <u>HPG Corp.,</u> 436 B.R. at 578–79 (finding that receipt of automatic stays, even

26   where the bankruptcy cases were subsequently dismissed, was sufficient basis for judicial

27   estoppel to prevent unfair advantage).  Where a plaintiff  "files successive petitions and obtains

28   successive stays without full disclosure of all assets, the debtor derives an unfair advantage if he

9

1   can later recover on undisclosed claims, and the bankruptcy system is laid bare for abuse." Id.;

2   see also Hamilton, 270 F.3d at 785 (finding an unfair advantage to a plaintiff who enjoyed "the

3   benefit of both an automatic stay and a discharge of debt").

4        Here, Plaintiff filed bankruptcy petitions on October 31, 2012, and on March 11, 2013.

5   Plaintiff twice received the benefit of an automatic stay and did not disclose his claims against

6   Defendants in either bankruptcy.  As discussed earlier, at a minimum, Plaintiff knew enough facts

7   at the time he filed his second bankruptcy to know that he had potential claims against

8   Defendants.  For this reason, it would confer an unfair advantage and condone practices by which

9   "the bankruptcy system is laid bare for abuse" to permit Plaintiff to conceal assets from the

10  Bankruptcy Court, and then permit him to pursue his claims in this court.  See HPG Corp., 436

11  B.R. at 579.

12       Thus, in this case, as in Hamilton and HPG Corp., "[t]he application of judicial estoppel . .

13  . is necessary to protect the integrity of the bankruptcy process."  See HPG Corp., 436 B.R. at

14  579; Hamilton, 270 F.3d at 785.  Here, the Bankruptcy Court accepted Plaintiff's clearly

15  inconsistent earlier position and Plaintiff would derive an unfair advantage if the court permits

16  him to pursue undisclosed claims.  For the reasons set forth above, Defendants' motion to dismiss

17  Plaintiff's Complaint is GRANTED without leave to amend.

18      **B. Defendants' Motion to Expunge the Lis Pendens**

19       A lis pendens is a "recorded document giving constructive notice that an action has been

20  filed affecting title or right to possession of the real property described in the notice."  Pedersen v.

21  Greenpoint Mortgage Funding, Inc., 900 F. Supp. 2d 1071, 1084 (E.D. Cal. 2012) (quoting Park

22  100 Investment Group II v. Ryan, 180 Cal.App.4th 795, 807, 103 Cal.Rptr.3d 218 (2010))

23  (internal citation & quotation omitted).  "Once filed, a lis pendens prevents the transfer of that

24  real property until the lis pendens is expunged or the litigation is resolved."  Ohlendorf v. Am.

25  Home Mortgage Servicing, 279 F.R.D. 575, 579 (E.D. Cal. 2010) (quoting BGJ Assoc., LLC v.

26  Superior Court of Los Angeles, 75 Cal.App.4th 952, 966–67, 89 Cal.Rptr.2d 693 (1999)).

27  ///

28  ///

1    California Code of Civil Procedure sections 405 through 405.61 authorize expungement

2    of a lis pendens.  "At any time after notice of pendency of action has been recorded, any party . . .

3    may apply to the court in which the action is pending to expunge the notice. . . ."  Cal. Code Civ.

4    Pro. § 405.30.  A court must expunge a lis pendens if it finds that the plaintiff "'has not

5    established by a preponderance of the evidence the probabl[e] validity of a real property claim,'

6    where probabl[e] validity requires a showing that it is more likely than not that the plaintiff will

7    obtain a judgment against the defendant on the claim, . . ."  Ohlendorf, 279 F.R.D. at 579 (internal

8    citations omitted).  A real property claim is a claim that affects title or possession of specific real

9    property.  See Id.; Cal. Code Civ. Pro. § 405.4.

10    Defendants move to expunge the lis pendens filed in conjunction with this action.

11    According to Defendants, the court must order the lis pendens expunged because Plaintiff has not

12    established by a preponderance of the evidence the probable validity of any real property claim

13    against Defendants.  (ECF 12 at 19–21.)  Defendants argue that because each of Plaintiff's claims

14    fail, he cannot maintain the lis pendens.  Plaintiff argues that the Court should not grant the

15    motion to expunge the lis pendens because all of Plaintiff's claims should survive Defendants'

16    motion to dismiss.  (ECF 13 at 14.)

17    Here, Plaintiff cannot succeed in opposing Defendants' motion to expunge the lis

18    pendens.  Plaintiff has not "tender[ed] evidence to successfully demonstrate that he is more likely

19    than not to obtain a judgment against defendants."  Ohlendorf, 279 F.R.D. at 584.  As stated in

20    this order, the Court holds that all of Plaintiff's claims are barred by the doctrine of judicial

21    estoppel and orders Plaintiff's Complaint dismissed with prejudice.  Since all of his claims are

22    ordered dismissed, it is not possible for Plaintiff to establish that it is more likely than not that he

23    will obtain a judgment against Defendants in this action.  See Castaneda v. Saxon Mortgage

24    Servs., Inc., 2010 WL 726903, *8 (E.D.Cal. Feb. 26, 2010) (holding that plaintiffs could not

25    establish that it was more likely than not that they would succeed on the merits of any of their

26    claims where all of plaintiffs' claims were dismissed due to their serious defects.)  For this

27    reason, Defendants' motion to expunge the lis pendens is GRANTED.

28    ///

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

For the stated reasons, Defendants' Amended Motion to Dismiss (ECF 12) is GRANTED. Plaintiff's claims are DISMISSED without leave to amend.  Defendants' Amended Motion to Expunge Lis Pendens (ECF 12) is GRANTED.  The Court orders the lis pendens recorded in the Placer County Recorder's Office as Doc-2013-0097944-00 expunged.  The Clerk of the Court is ordered to close the case.

**IT IS SO ORDERED.**

Dated: March 20, 2014

Troy L. Nunley
United States District Judge